## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| NATASHA R. LOTT ) | Case No. 10-06061-TOM-13 |
| ) | |
| Debtor. ) | |

****NOT INTENDED FOR PUBLICATION****

<u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on the Chapter 13 Trustee's Objection To Confirmation And Motion To Dismiss ("Objection And Motion") and a hearing on confirmation. Hearings were held on this matter on January 6, 2011 and January 20, 2011 during which counsel for the Debtor, Harvey Campbell, and the Chapter 13 Trustee, D. Sims Crawford, or the Assistant Chapter 13 Trustee, Charles King, were present. This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334(b) and the District Court's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984.[1] This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A).[2] This Court has considered the

---

[1] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:

The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[2] 28 U.S.C. § 157(b)(2)(A) provides:

(b)(2) Core proceedings include, but are not limited to-
(A) matters concerning the administration of the estate[.]

pleadings, arguments of counsel, and the law and finds and concludes as follows.[3]

## I. FINDINGS OF FACT[4][5]

On October 8, 2010, Debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code. Debtor's schedules reflect that she has unsecured nonpriority debts in the amount of $28,231.53[6] and secured debts, without deducting the value of collateral, totaling $9,783.00.[7][8] Debtor's Schedule I reflects gross monthly income of $3,306.98,[9] from which Debtor subtracts payroll deductions in the amount of $766.11. This amount includes a

---

[3]This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, which is made applicable to contested matters pursuant to Federal Rule of Bankruptcy Procedure 9014©.

[4]Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

[5]The Trustee and Debtor's counsel filed a Joint Stipulation Of Facts with this Court pursuant to this Court's order dated. The Court will incorporate these facts into its Findings Of Fact.

[6]The claims register reveals that proofs of claim were filed for unsecured debts totaling $15,740.57.

[7]On Schedule D, Debtor lists $1,675.00 of her $3,500.00 debt to 1st Franklin Financial ("1st Franklin") as unsecured debt because, according to Debtor, the value of the collateral - a 1994 Taurus - is $1,825.00. The last amended plan reflects the same amounts and values. The Court notes, however, that unless a motion to value is filed separately from the plan, set and heard, there is no "valuation" of the collateral based on this Court's interpretation of *In re Calvert*, 907 F.2d 1069 (11th Cir. 1990). *See also* 11 U.S.C. § 506; FED. R. BANKR. P. 3012.

[8]The claims register reveals that proofs of claim were filed for secured debts totaling $9,308.16.

[9]The Joint Stipulation Of Facts filed by the Trustee and Debtor's counsel provides that Debtor is grossing approximately $3,472.70 in salary.

2

deduction in the amount of $90.48[10] for a contribution to Debtor's 401(k) retirement account. After calculating her payroll deductions and adding in alimony, maintenance or support payments, and her daughter's Social Security assistance, Debtor lists average monthly income of $3,293.87.[11] The Joint Stipulation Of Facts, however, provides that Debtor is grossing $3,472.70 - $165.72 more than what Debtor listed on her Schedule I - and contributing $160.58 per month to her 401(k) retirement account ($74.17 bi-weekly divided by 2 then multiplied by 4.33) - $70.10 more than Debtor listed on her Schedule I. Assuming all other expenses and income are the same, it appears Debtor's average monthly income should be increased by $95.62, which would raise Debtor's average monthly income from $3,293.87 to $3389.59. On her Schedule J, Debtor lists average monthly expenses of $2,950.83 - including a charitable contribution of $541.50 -, leaving monthly net income of $343.04. Again, based on the Joint Stipulation Of Facts, Debtor's average monthly net income should be increased by $95.62 in view of the fact that Debtor's average monthly income was, as outlined above, increased by this amount. This increase raises Debtor's average monthly net income to $438.66.

Debtor's original Chapter 13 Plan proposed to pay Debtor's unsecured nonpriority

---

[10]The Employee Income Records filed by Debtor on November 18, 2010 provide that Debtor is funding her 401(k) retirement plan at the rate of $78.78 bi-weekly. These records also indicate that Debtor is repaying a 401(k) loan at the rate of $44.12 bi-weekly. The Joint Stipulation Of Facts provides that Debtor is contributing approximately $74.17 bi-weekly into a "qualified IRA" despite the fact that Debtor's Employee Income Records refer to a 401(k) account. The Joint Stipulation Of Facts further provides that "[a]lthough she was also repaying a pension loan at the approximate rate of $37.82 bi-weekly, those payments have now stopped." The Court will therefore only consider Debtor's continuing contributions to her 401(k) - "qualified IRA" - in this opinion.

[11]Because Debtor has a household of 7, for which the applicable median family income is $87,570.00, Debtor is a below median income debtor. The Debtor claims 6 children as dependents - 2 sons, 2 daughters, 1 niece, and 1 nephew. No information or explanation was provided why Debtor claims a sibling's children as dependents.

creditors a 0% dividend with bi-weekly payments to the Trustee of $158.36 over the course of 36 months. Per the terms of this plan, Credit Acceptance was to receive fixed payments in the amount of $208.27 to cure a total secured debt of $5,862.00 with 5% interest; Standard Furniture was to receive fixed payments in the amount of $14.92 to cure a total secured debt of $420.00 with 5% interest; and 1st Franklin was to receive fixed payments in the amount of $68.84 to cure a secured debt of $1,825.00[12] with 5% interest. Debtor's secured debt to 1st Franklin corresponds to a loan she obtained from 1st Franklin on September 17, 2010. This transaction resulted in a repayment on a prior loan in the amount of $1,838.25 and Debtor's receipt of loan proceeds in the amount of $1,004.96. There were other charges made a part of the loan making the total amount borrowed $3,367.58 with interest at 30% or more. The loan was to be repaid over 24 months at $198.00 per month. Claim No. 4-1. On October 8, 2010, the same day this Chapter 13 petition was filed, Debtor borrowed approximately $500.00 from Check Into Cash. Debtor has not provided any testimony or evidence with respect to how these funds were used or why this loan was made.

Debtor filed her First Amended Chapter 13 Plan on November 22, 2010. This Plan was substantially similar to Debtor's original Plan;[13] however, Debtor's First Amended Plan also

---

[12] As noted *supra* at note 7, Debtor listed $1,675.00 of her listed $3,500.00 debt to 1st Franklin Financial as unsecured, leaving a secured balance of $1,825.00.

[13] Debtor's First Amended Plan listed a total debt of $3,051.46 owing to 1st Franklin to reflect the amount listed by 1st Franklin as secured in its proof of claim. However, Debtor continued to assert that the amount of the secured portion of this debt was limited to $1,825.00 because, according to the Debtor, this amount was the value of the collateral. On the same day Debtor's First Amended Plan was filed, Debtor filed an objection to 1st Franklin's proof of claim, arguing that the entire balance of the claim should be reduced to an unsecured nonpriority claim since 1st Franklin did not attach a title to its proof of claim. On December 3, 2010, Debtor filed a Motion To Avoid 1st Franklin's nonpossessory, non-purchase money lien on her two computers, which Debtor

4

proposed to pay into the case any tax refunds Debtor received from the IRS.[14]

On December 1, 2010, the Chapter 13 Trustee, D. Sims Crawford, filed a Trustee's Objection To Confirmation And Motion To Dismiss. The Trustee made the following arguments in his Objection And Motion: 1) Debtor's proposed plan payments were insufficient to fund the plan; 2) Debtor's plan was not feasible pursuant to 11 U.S.C. § 1325(b)(2) because the Trustee's recommended bi-weekly payment of $177.00 exceeded Debtor's monthly disposable income of $343.04;[15] 3) Debtor's proposed fixed payment of $64.84 to 1st Franklin would not cure 1st

---

valued at $600.00. According to Debtor, 1st Franklin's lien was to be avoided pursuant to 11 U.S.C. § 522(f) because the value of 1st Franklin's lien - $3,051.46 - is exceeded by the extent of the impairment of Debtor's personal property exemption - $11,708.16.

On December 9, 2010, 1st Franklin filed a Response to Debtor's Motion To Avoid in which 1st Franklin asserted that Debtor's Motion To Avoid was due to be denied because, according to 11 U.S.C. § 522, a Debtor may only seek to avoid a lien on one computer. On December 10, 2010, 1st Franklin filed a response to Debtor's objection to claim in which it asserted that its claim would have been perfected and fully secured but for the fact Debtor filed the instant bankruptcy case 21 days after she obtained a loan - which was to be secured by Debtor's 1994 Ford Taurus - from 1st Franklin. 1st Franklin also filed an objection to the confirmation of Debtor's Chapter 13 plan on December 10 in which 1st Franklin argued that Debtor's Chapter 13 plan was not filed in good faith pursuant to Section 1325(a)(3) based on Debtor's conduct as outlined above.

Debtor subsequently dismissed her Motion To Avoid 1st Franklin's lien on December 21, 2010 and withdrew her objection to 1st Franklin's claim on December 28, 2010. On January 3, 2011, the Debtor and 1st Franklin filed a joint motion to lift the automatic stay as to the 1994 Ford Taurus Debtor had pledged to secure her loan from 1st Franklin. 1st Franklin withdrew its objection to the confirmation of Debtor's Chapter 13 plan on January 4, 2011. Despite these actions, Debtor's Third Amended Plan filed February 3, 2011 continues to provide for payments of this debt "only if creditor has an allowed secured claim." Doc. No. 70

[14] According to Debtor's 2009 tax documents, Debtor received a refund from the IRS in the amount of $5,470.00.

[15] Assuming the Joint Stipulation Of Facts is correct in noting that Debtor's average monthly gross income is $3,742.70, it appears, as previously mentioned, that Debtor has average monthly net income of $438.66. This amount, if available at the time of the filing of Chapter 13 Trustee's Objection And Motion, would have been enough to satisfy these recommended bi-weekly payments of $177.00. However, as will be discussed *infra*, the Trustee now recommends higher bi-weekly plan payments of $221.00.

5

Case 10-06061-TOM13    Doc 80    Filed 05/23/11    Entered 05/23/11 14:17:18    Desc Main
Document    Page 5 of 16

Franklin's claim with 5% interest within 30 months; and 4) Debtor's Plan was not proposed in good faith as required by 11 U.S.C. § 1325(a)(3) and *In re Kitchens*, 702 F.2d 885 (11th Cir. 1983) because Debtor's First Amended Plan proposed to fund her own 401(k) retirement account while paying her unsecured nonpriority creditors a 0% dividend.

On December 21, 2010, Debtor filed her Second Amended Plan. This Plan was roughly similar in terms to Debtor's First Amended Plan; however, Debtor's Second Amended Plan did not propose to contribute any tax refunds to her case.

The Court held a hearing on the Trustee's Objection and Motion on January 6, 2011. During this hearing, the Chapter 13 Trustee recommended a 5% dividend to unsecured creditors if Debtor desired to make bi-weekly payments of $156.36. Additionally, the Trustee reasserted his position that a Chapter 13 Plan which proposes to pay unsecured creditors less than 100% is not filed in good faith pursuant to Section 1325(a)(3) and *In re Kitchens* where the Debtor continues to fund her own retirement account at the expense of her unsecured creditors. Debtor's counsel responded by asserting that he was of the opinion that Debtor's Chapter 13 plan was filed in good faith pursuant to the Bankruptcy Code. He then requested a two week continuance to determine whether or not Debtor would like to go forward with this argument. The Court granted this request and continued the hearing on the Trustee's Objection and Motion to January 20, 2011.

During the January 20, 2011 hearing, Debtor's counsel announced that Debtor was interested in arguing that Debtor's proposed retirement contributions did not compromise the

---

Additionally, the Court believes Debtor must contribute even more than this amount to her Chapter 13 plan due to Debtor's continuing 401(k) contributions and other behavior in order to satisfy the Trustee's Section 1325(a)(3) good faith objection.

6

good faith of Debtor's proposed Chapter 13 plan. Debtor's counsel then proceeded to request some time to brief the facts and law relevant to this matter. The Court granted this request and gave Debtor's counsel until February 1, 2011 to file his brief. The Court gave the Trustee until February 22, 2011 to file a reply brief, if he desired to file one. The Court also requested the parties either provide testimony or submit a Joint Stipulation Of Facts for this Court to consider while addressing the parties' contentions.

Debtor filed a brief in opposition to the Chapter 13 Trustee's Objection And Motion ("Debtor's Brief") on January 31, 2011. In her brief, Debtor first argues that the enactment of the disposable income test of 11 U.S.C. § 1325(b) in 1984 created "an objective and uniform test for measuring the debtor's ability to pay [(i.e. the first Kitchens factor - the amount of a debtor's income from all sources)]" which limits "judicial discretion in determining the same." Debtor's Brief at 2. Therefore, according to Debtor, a Chapter 13 Trustee may not successfully object to the confirmation of a debtor's Chapter 13 plan under Section 1325(a)(3) based solely on the amount of income a debtor proposes to contribute to her Chapter 13 plan where the amount the debtor proposes to contribute has been conclusively established by Section 1325(b). According to Debtor, this conclusion is bolstered by the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") amendments to Section 1325(b), which created a conclusive, bright-line test for determining a debtor's disposable income. Debtor also argues that qualified employee retirement account contributions are neither property of the estate nor disposable income pursuant to the language provided by Congress in 11 U.S.C. § 541(b)(7). Thus, qualified retirement accounts are also beyond the scope of a Section 1325(a)(3) good faith inquiry.

Based on the foregoing, Debtor argues that the Chapter 13 Trustee's good faith objection,

7

which Debtor characterizes as one "based solely on the debtor's ability to pay," must fail because it focuses upon the amount of Debtor's disposable income, which was conclusively established by Section 1325(b), and Debtor's proposed 401(k) retirement account contributions. Debtor's Brief at 2-7. Debtor further asserts that her Chapter 13 Plan satisfies the *Kitchens* test. In support of this contention, Debtor asserts that: 1) she has accurately disclosed her income; 2) her proposed repayment period exceeds the minimum 36 month repayment period; 3) her Second Amended Plan deals fairly with all of her creditors and will pay her unsecured creditors a dividend of approximately 22%, which is substantially more than what they would receive from a Chapter 7 distribution; 4) her Plan proposes to commit all of her disposable income in accordance with 11 U.S.C. § 1325(b); and 5) her retirement contributions amount to only roughly 2% of her income.

Debtor filed her Third Amended Chapter 13 Plan on February 3, 2011. In this Plan Debtor proposes to pay a total debt of $12,348.00 through bi-weekly payments of $158.36 for a period of 36 months with a 22% distribution to nonpriority unsecured creditors. Pursuant to the terms of this Plan, Credit Acceptance will receive fixed payments in the amount of $206.90 to cure a total secured debt of $5,823.43 with 5% interest; Standard Furniture will receive fixed payments of $15.39 to cure a total secured debt of $433.27 with 5% interest; and 1st Franklin will receive fixed payments in the amount of $64.84 to cure a secured debt of $1,825.00.[16] This Plan also proposes to pay into Debtor's case any tax refunds she receives from the IRS beginning with tax year 2010.

---

[16] Debtor asserts, as she previously asserted in her original and First Amended Plans, that 1st Franklin's secured claim is limited to the value of the collateral - $1,825.00 -, and in the special provision, as previously noted, provides "[o]nly if creditor has an allowed secured claim." Doc. No. 70

8

On February 22, 2011, the Chapter 13 Trustee filed a Brief In Support Of Trustee's Objection and Motion. In this brief the Chapter 13 Trustee notes that Debtor's proposed 22% distribution to unsecured creditors changes the totality of the circumstances; however, it does not change the Trustee's argument that Debtor's proposed plan has not been proposed in good faith pursuant to Section 1325(a)(3)[17] and *In re Kitchens* since Debtor continues to propose funding her 401(k) retirement account at the expense of her unsecured creditors. The Chapter 13 Trustee also notes that Debtor's Brief is inaccurate to the extent it continues to assert that Debtor's repayment commitment period is 48 months in view of Debtor's February 3, 2011 Chapter 13 Plan, which proposes a repayment period of 36 months. Additionally, the Trustee notes that the proposed bi-weekly payments of $158.36 over the course of 36 months with a 22% distribution to general, unsecured creditors will not pay the claims filed in Debtor's case. According to the Trustee, bi-weekly payments in the amount of $221.00 over the course of 36 months are necessary to satisfy the claims filed in Debtor's case with a 22% distribution to Debtor's unsecured nonpriority creditors. According to the Chapter 13 Trustee, these recommended plan payments are not feasible because Debtor does not have sufficient monthly net income to make these payments.[18]

The Court also notes that Debtor's pay stubs reflect that money was going into a checking account, a "2nd checking" account and a "2nd savings." No information was provided to explain

---

[17] The Trustee does not object to the confirmation of Debtor's Chapter 13 Plan on the basis that Debtor failed to file her petition in good faith pursuant to 11 U.S.C. § 1325(a)(7).

[18] Assuming the veracity of the statements made jointly by the Trustee and Debtor's counsel in the Joint Stipulation Of Facts, it appears that Debtor's average monthly net income of $433.86 would not allow Debtor to make Trustee's recommended bi-weekly payments.

these transactions or why Debtor was depositing her net pay into 3 different accounts. Also, Debtor owes approximately $5,100.00 in loans, credit card debts and other similar debts based on the claims filed. In addition, Debtor has two claims which total approximately $8,850.00 and represent past due rent for apartments where she resided. No testimony or evidence was presented to provide any explanation or reason for these unpaid rents or how the loan proceeds were spent.

## II. CONCLUSIONS OF LAW

*Good Faith*

The Trustee asserts that Debtor's Chapter 13 Plan was not filed in good faith pursuant to Section 1325(a)(3) and *In re Kitchens*. Debtor contends that her Chapter 13 Plan was filed in good faith. Additionally, Debtor asserts that the Trustee's good faith objection must fail since it is focused upon factors which are outside the scope of a Section 1325(a)(3) good faith inquiry. Debtor must prove by a preponderance of the evidence that her Chapter 13 Plan satisfies the good faith requirement of Section 1325(a)(3). *Smyrnos v. Padilla (In re Padilla)*, 213 B.R. 349, 352 (9th Cir. B.A.P. 1997).

Pursuant to 11 U.S.C. § 1325(a)(3), a Chapter 13 Plan must be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). The Bankruptcy Code does not provide a definition for "good faith." However, the Eleventh Circuit announced in the 1983 case of *In re Kitchens* that good faith must be determined through a consideration of the following non-exclusive factors - the *Kitchens* factors:

> (1) the amount of the debtor's income from all sources; (2) the living expenses of the debtor and his dependents; (3) the amount of attorney's fees; (4) the probable or expected duration of the debtor's Chapter 13 plan; (5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13; (6)

10

> the debtor's degree of effort; (7) the debtor's ability to earn and the likelihood of fluctuation in his earnings; (8) special circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors; (10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors; (11) the burden which the plan's administration would place on the trustee.

702 F.2d 885, 888-89 (11th Cir. 1983). Other factors that may be considered are "the extent to which claims are modified," "the extent of preferential treatment among classes of creditors," the "substantiality of repayment to unsecured creditors," "whether [a] debt would be nondischargeable under Chapter 7," and the "accuracy of the plan's statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court." *Kitchens*, 702 F.2d at 889.

Since the release of the *Kitchens* decision, Congress has enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("1984 Amendments") and the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), among other amendments. The 1984 Amendments included the newly adopted Section 1325(b), which provided a more objective formula for determining the amount of income a debtor must contribute to her Chapter 13 Plan. Prior to the enactment of Section 1325(b), the amount of income a debtor had to commit to her Chapter 13 plan was left to the sole discretion of courts and determined as a matter of good faith during a Section 1325(a)(3) good faith inquiry. BAPCPA further narrowed the scope of courts' discretion in cases involving "good faith" issues. *See, e.g.*, 11 U.S.C. §1325(b)(2)(providing a bright-line formula for calculating disposable income); 11 U.S.C. §1325(b)(4)(defining the applicable commitment period of a Chapter 13 plan). These amendments did not, however, eliminate the requirement that a debtor's Chapter 13 plan must be

11

proposed in good faith. In fact, Congress appears to have reinforced this good faith requirement through its addition of 11 U.S.C. § 1325(a)(7) (added through BAPCPA),[19] which requires a debtor to file her petition in good faith.

Even so, the Bankruptcy Code still does not provide a definition for good faith. Consequently, courts of the Eleventh Circuit have continued to consider those *Kitchens* factors and other relevant inquiries which have not been subsumed by statute when determining whether a debtor's Chapter 13 plan has been proposed in good faith. *See, e.g.*, *White v. Waage*, 440 B.R. 563 (M.D. Fla. 2010); *In re Shelton*, 370 B.R. 861 (Bankr. N.D. Ga. 2007); *In re Roberts*, 366 B.R. 200 (Bankr. N.D. Ala. 2007). The Court agrees with the position of these courts and will therefore consider multiple factors including those *Kitchens* factors which have not been subsumed by statute when determining whether Debtor's Chapter 13 Plan was proposed in good faith pursuant to Section 1325(a)(3).

Before proceeding to its analysis of whether Debtor filed her Chapter 13 plan in good faith pursuant to Section 1325(a)(3) and *In re Kitchens*, the Court will first address Debtor's contention that her 401(k) retirement account contributions are beyond the scope of a Section 1325(a)(3) good faith inquiry pursuant to 11 U.S.C. §541(b)(7). The Court will then address Debtor's assertion that Trustee's Objection And Motion are due to be overruled and dismissed, respectively, because, according to Debtor, they are "based solely on the debtor's ability to pay." With respect to the former matter, the Court notes that Section 541(b)(7), which was adopted as part of the BAPCPA amendments, provides that employee contributions to certain qualified savings plans are exempt from inclusion in property of the estate and disposable income. 11

---

[19] As previously noted, the Trustee does not assert that Debtor failed to file her petition in good faith as required by Section 1325(a)(7).

12

U.S.C. § 541(b)(7). However, exemption from inclusion in property of the estate and disposable income does not necessarily mean that Congress intended to exclude these retirement account contributions from a Section 1325(a)(3) good faith inquiry. *In re Shelton*. 370 B.R. 861, 867 (Bankr. N.D. Ga. 2007); *but see In re Johnson*, 346 B.R. 256 (Bankr. S.D. Ga. 2006)(holding that bankruptcy court may not consider 401(k) plan contributions or payroll deductions made to repay loans from 401(k) during Section 1325(a)(3) good faith inquiry, provided contributions do not exceed contribution limits). In fact, the opposite appears to be true given that Congress "expressly limited the application of § 541(b)(7) to one particular paragraph, § 1325(b)(2)," which is itself "limited to a specific application: [f]or purposes of this subsection." *Shelton*, 370 B.R. at 867. Consequently, the Trustee and this Court may consider Debtor's retirement account contributions - whether a payment or a repayment - during a Section 1325(a)(3) good faith inquiry.

The Court also disagrees with Debtor's assertion that the Trustee's Objection And Motion are due to be overruled and dismissed, respectively, because they are "based solely on the debtor's ability to pay." The Court recognizes that some courts have held that Section 1325(b) has subsumed the "amount of income" (*i.e.* debtor's ability to pay) *Kitchens* factor, *see White v. Waage*, 440 B.R. 563, 569 (M.D. Fla. 2010)(quoting *In re Shelton*, 370 B.R. at 867("Once [Section] 1325(b) is satisfied, the debtor must also comply with the good faith requirement in [Section] 1325(a)(3). Good faith has no role in assessing whether the amount of income paid into the plan is sufficient, but good faith and the remaining *Kitchens* factors remain relevant to the confirmability of the plan")); therefore, according to those courts and Debtor, a Section 1325(a)(3) good faith objection may not consider the amount of Debtor's disposable income. However, it is clear to the Court that Debtor's "ability to pay" (*i.e.* the sufficiency/amount of

13

Case 10-06061-TOM13    Doc 80    Filed 05/23/11    Entered 05/23/11 14:17:18    Desc Main
Document      Page 13 of 16

Debtor's disposable income) is not the sole focus of the Trustee's Motion And Objection; rather, the Trustee's Motion And Objection are concerned with Debtor's proposed treatment of her unsecured nonpriority creditors in view of Debtor's available resources. This concern corresponds with the "substantiality of repayment" and "degree of effort" *Kitchens* factors which, as will discussed *infra*, have not been subsumed by statute. Thus, Debtor's position that the Trustee's Objection and Motion are due to be overruled and dismissed, respectively, because they focus solely on Debtor's "ability to pay" fails.

Debtor's Third Amended Plan proposes to pay Debtor's unsecured nonpriority creditors a 22 percent[20] dividend over the course of 36 months through bi-weekly plan payments of $158.36 while voluntarily contributing $78.78 bi-weekly to her 401(k) retirement plan. Essentially, Debtor is proposing to pay her unsecured nonpriority creditors pennies on the dollar while funding her own 401(k) retirement account at a rate of nearly half of Debtor's proposed bi-weekly plan payments.

The Court questions whether Debtor's minimal repayment to her unsecured creditors satisfies the "substantiality of repayment to unsecured creditors"[21] and "degree of effort"[22] *Kitchens* factors. The record clearly reflects that Debtor is in a position to repay her unsecured nonpriority creditors in a much more substantial, meaningful manner if her 401(k) contributions

---

[20]As noted *supra*, according to the Trustee, Debtor's proposed bi-weekly plan payments of $158.36 will not provide a 22 percent dividend to Debtor's unsecured nonpriority creditors. The Trustee asserts that bi-weekly payments of $221.00 are required to satisfy the filed claims and provide a 22 percent dividend to Debtor's unsecured nonpriority creditors.

[21]The "substantiality of repayment" *Kitchens* factor remains relevant in post-BAPCPA cases. *See In re Sweet*, 428 B.R. 917, 921 (Bankr. M.D. Ga. 2010).

[22]The "debtor's degree of effort" *Kitchens* factor also remains relevant in post-BAPCPA cases. *See In re Shelton*, 370 B.R. 861, 868 (Bankr. N.D. Ga. 2007).

14

are redirected to her Chapter 13 plan payments. The record also reflects that Debtor has not provided any testimony or evidence of any efforts she has made to cut her expenses or to otherwise change or alter the lifestyle that led to her current financial problems. Furthermore, Debtor has not provided any testimony or evidence that she is legally compelled to make these contributions,[23] that these contributions are necessary for the preservation of assets of the estate, that she will suffer undue hardship if these contributions are halted, or that the redirecting of these contributions will impair Debtor from obtaining a fresh start.

There are other factors to be considered when determining whether Debtor's Third Amended Plan was proposed in good faith. Debtor has not provided any explanation why she is making monthly charitable contributions of over $541.50, approximately 16% of her gross pay or her net income. Even a reduction of this contribution would pay a substantial amount to creditors.[24] The Court also notes that if Debtor continues to be entitled to Federal/IRS tax refunds even in half the amount she received for 2009 - $5,470.00 -, that amount, $8,100.00

---

[23] In the case of *In re Tibbs*, 242 B.R. 511 (Bankr. N.D. Ala. 1999), this Court held that a debtor's contributions to his state-sponsored retirement account could be continued because these contributions were required by statute and therefore involuntary in nature. The facts of this case are distinguishable from those in *Tibbs* because Debtor's contributions in this case are being made to a 401(k) retirement account. Contributions to this type of plans are voluntary in nature. *See In re Herbert*, Case No. BK07-40224, 2007 WL 6363172, at *5 (Bankr. D. Neb. May 21, 2007)("there is no evidence that [401(k)] contributions are 'mandatory.' In fact, 401(k) plans are by their very nature [] voluntary contributions by a debtor into a retirement account for the benefit of the debtor"); Karen C. Burke & Grayson M.P. McCouch, *SOCIAL SECURITY REFORM: LESSONS FROM PRIVATE PENSIONS*, 92 Cornell L. Rev. 297, 305-06 (2007)("The distinctive characteristic of 401(k) plans is that they give individual employees unprecedented control over decisions concerning contributions, investments, and withdrawals of funds in their own accounts").

[24] For example, if Debtor contributes $450.00 a month, then over 36 months an additional $3,276.00 would be paid to creditors.

15

Case 10-06061-TOM13    Doc 80    Filed 05/23/11    Entered 05/23/11 14:17:18    Desc Main
Document      Page 15 of 16

(approximately $2,700.00 multiplied by 3 years), would satisfy over 50% of all filed unsecured claims.  The Court also finds Debtor has not met the good faith requirements based on her acquisition of loan proceeds from two separate loan transactions immediately prior to the filing of this bankruptcy petition without any explanation as to why or how the funds from these two loans were used.  Additionally, the Court notes that Debtor has failed to explain why she is having her net pay distributed to three different accounts.  Lastly, the Court notes that a vast majority of Debtor's unsecured debts - roughly $13,950 of the $15,740 in filed unsecured claims, approximately 89% - are loans, credit card debts, or past due rent for apartments where Debtor resided, as opposed to significant medical expense debts or other, similar debts.

Based on the foregoing, the Court concludes that Debtor's Third Amended Plan was not proposed in good faith pursuant to Section 1325(a)(3) and *In re Kitchens*.

THEREFORE, IT IS ORDERED that the Trustee's Objection To Confirmation is sustained and confirmation of Debtor's Third Amended Plan is DENIED; Debtor has 15 days to file an Amended Plan if she chooses to do so.  The Trustee's Motion To Dismiss and confirmation are re-set for June 30, 2011 at 11:15 a.m.

Dated this the 23rd day of May, 2011.

                                                         /s/ Tamara O. Mitchell
                                                         **TAMARA O. MITCHELL**
                                                         **United States Bankruptcy Judge**

TOM: rdt

xc:    D. Sims Crawford, Chapter 13 Trustee
       Harvey B. Campbell, Jr., John M. Caraway, Jr., and Shavon Latress Burton, attorneys for the Debtor